

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Mr. A. B. Conner
Director, Texas Agricultural
Experiment Station
Agricultural and Mechanical College of Texas
College Station, Texas

Dear Mr. Conner:

Opinion No. 0-6087

Re: Under the provisions of Title 17, Chapter 13, Articles 1489-1498, inclusive, Vernon's Annotated Penal Code, 1925, (1) is milled feed, such as gluten meal, shipped into Texas in carload lots by an importer subject to be taxed and tagged, and (2) if such milled feed, after being taxed and tagged, is used as an ingredient in the manufacture of another mixed feed by a manufacturer, is the _manufactured feed_ subject to be taxed and tagged, and (3) related question.

In your letter of June 27, 1944, you request the opinion of this department on the following factual situation and three questions of law based thereon:

"In connection with the administration of the Texas Pure Feed Law, a question has arisen regarding the necessity of attaching Texas tax tags to milled feeds being shipped into Texas for mixing purposes in the manufacture of other feeds.

"We have ruled for many years that such feed should be registered and tagged and that when this milled feed was in turn used to manufacture a mixed feed, the mixed feed so manufactured should be registered and tagged regardless of the fact that the milled ingredients had already been registered and tagged in compliance with the law to show its quality.

COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

"I am advised that the Universal Mills and the Bewley Mills of Fort Worth hold that such a requirement as we have made is double taxation, especially when the milled feed, such as corn gluten meal, is shipped in bulk in carload lots and accompanied by tags. We have held that the concern manufacturing the gluten meal was a manufacturer and therefore was subject to the tax on the milled product he produced and sold in the State. We have also held that when the Universal Mills or Bewley Mills or any other concern used such a product as gluten meal as an ingredient in the manufacture of another feed that the concern is in the sense of the law a manufacturer of a new product and that when such product is offered for sale or sold on the market the tax must be paid.

"I enclose herewith a copy of an opinion rendered on a similar case on October 1, 1915 by C. C. McDonald, Assistant Attorney General, and also a copy of a letter dated November 13, 1929 from Paul D. Page, Jr., Assistant Attorney General, in which he holds to the same opinion as that rendered in 1915.

"The questions we wish to put before you are:

"1. When a milled feed, such as gluten meal, is shipped into this State in bulk in carload lots to be used as an ingredient in the manufacture of another mixed feed, is the milled feed to be so used subject to tax?

"2. When an ingredient, such as gluten meal, has already been taxed and tagged as such is used as an ingredient in the manufacture of another mixed feed, is the manufactured feed subject to the feed tax?

"3. When a milled feed, such as gluten meal, is shipped into the State in bulk in carload lots and taxed and tagged and later used as an ingredient of another mixed feed and the feed so manufactured is taxed and tagged, is there a question of double taxation involved?

"I will appreciate your rendering us an opinion on this matter at the earliest possible date in order that I may proceed in accordance with the law in administering the Texas Pure Feed Law, (Title 17, Chap. 13, Articles 1489-1498, inc., of the Penal Code)."

Mr. A. B. Conner, page 3

The following articles of Title 17, Chapter 13, Vernon's Annotated Penal Code, 1925, are applicable to the factual situation set forth above and must be construed together to arrive at a proper construction of the questions involved.

Article 1489, "Tag and certificate" is as follows:

"Every lot or parcel of feeding stuff, used for feeding farm live stock, sold, offered or exposed for sale in this State, for use within the State, shall have attached a tag described in article 1492, carrying a plainly printed statement clearly and truly certifying the number of net pounds of feeding stuff in the package, stating the name or names of material of which such weight is composed where the contents are of a mixed nature, the name, brand or trade mark under which the article is sold, the name and address of the manufacturer or importer, the place of manufacture, such information as is required by article 1497, if any, . . ."

Article 1490 defines the term "Feeding Stuff":

"The term 'feeding stuff,' as used in this chapter, is defined to mean and include wheat bran, wheat shorts, linseed meal, cotton seed meals, pea meals, cocoanut meals, gluten meals, gluten feeds, maize feeds, starch feed, sugar feeds, dried brewer's grains, malt sprouts, hominy feeds, cerealine feeds, rice meals, rice bran, rice polish, oat feeds, corn and oat chops, corn chops, ground beef or mixed fish feeds, and all other materials of similar nature, but shall not include hay or straw, the whole seed or grains of wheat, rye, barley, oats, Indian corn, rice, buckwheat or broomcorn, or any other whole or unground grains or seed."

Article 1491 requires the filing of a statement and the deposit of samples:

"Before any feeding stuff is so offered or exposed for sale, the importer, manufacturer or party who causes it to be sold, or offered for sale within this State for use within the State, shall, for each feeding stuff bearing a distinguishing name and trade mark, file with the director of the Texas Agricultural Experiment Station a certified copy of the statement named in article 1489, . . ."

Mr. A. B. Conner, page 4


Article 1492 provides for the payment of tax and the affixing of the tag:

"The manufacturer, importer, agent or seller of each feeding stuff, shall before the article is offered for sale, pay to the director of the Texas Agricultural Experiment Station, an inspection tax of ten cents for each ton of such feeding stuff sold or offered for sale in this State, for use within the State, and shall affix to each lot shipped in bulk, and to each bag, barrel, or other package of such feeding stuff a tag to be furnished by said director, stating that all charges specified in this article have been paid. The director of said Experiment Station is hereby empowered to prescribe the form of such tags, and adopt such regulations as may be necessary for the enforcement of this law. Whenever the manufacturer or importer or shipper of a feeding stuff shall have filed a statement made as provided for in article 1489, and paid the inspection tax, no agent or seller of said manufacturer, importer, or shipper shall be required to file such statement or pay such tax."

Article 1493 provides for the penalty for failure to affix the tag or label:

"Any manufacturer, importer, or agent, selling, offering or exposing for sale, any feeding stuff, without the statement required by article 1489, and the tax tag required by the preceding article, or with a label stating that said feeding stuff contains a larger percentage of protein, fat or nitrogen-free extract, or a smaller percentage of crude fiber, than is contained therein, shall be fined not less than one hundred nor more than five hundred dollars."

Article 1495 defines the term "Importer":

"The term 'importer' means all persons as shall bring into or offer for sale within this State feeding stuff manufactured without this State."

None of the foregoing Articles have ever been officially construed by the appellate courts of Texas since the recodification thereof in 1925.

Mr. A. B. Conner, page 5

Under the provisions of Article 1492, supra, in connection with the other articles herein cited, the tax imposed is purely an "inspection tax" for the purpose of assuring the buyer of the feed stuffs or mixed feeds within the State of Texas, first, as to the nature of the materials so offered for sale; second, as to the protein quantity thereof; and third, that they are not adulterated. This is in no sense an import tax or a use tax, but is purely an inspection tax and has been held by the Supreme Court of the United States not to be an infringement on the Interstate Commerce Clause of the Constitution of the United States. It will be noted that throughout the foregoing articles the term "selling," "offering or exposing for sale," and particularly the words "offering for sale," are stressed. Therefore, unless the product is offered for sale, either in kind as imported or mixed with other products, no tax could be imposed, since no inspection of the product would be necessary for the protection of the buyer.

If the milled feed imported into this State in bulk by the importer under the provisions of Articles 1492, 1495 and 1490 is offered for sale in its identical form by the importer, then unquestionably the tax must be paid and the tag affixed in accordance with the provisions of such articles.

If, however, the milled feed is imported into the State in bulk in carload lots to be used as an ingredient in the manufacture of other mixed feeds by the importer, and is only so used, then no tax would be required since a tax would be required of the importer as a manufacturer after such feeds had been mixed with other feeds. The dominant purpose of the inspection is to determine the crude protein quantity of the imported feedstuffs, if offered for sale; but if used by the importer for the manufacture of another mixed feed, which feed when so mixed must be inspected before being offered for sale, then no necessity exists for the inspection of the original bulk feedstuffs, if not offered for sale as such.

Therefore, the answer to your first question based upon the foregoing assumptions of fact is "No."

Mr. A. B. Conner, page 6

When the imported milled feed has already been taxed and tagged as such, and is used as an ingredient in the manufacture of another mixed feed, a new product has been created which necessitates an inspection to determine whether or not the new product contains the nedesasry proteins and is free from adulteration, as required by the preceding articles. This is a manufacture of an entirely new product, and as such the use by the manufacturer of the imported feed stuffs subjects it to the necessity of inspection, irrespective of whether or not the original imported feedstuffs have already been inspected and tagged and a tax fixed thereon.

The answer to your second question is therefore "Yes."

When milled feed has been shipped into Texas in carload lots, the tax paid thereon, and the tag affixed, and it is later "used" as an ingredient of another mixed feed, and the feed so manufactured is tagged and taxed, there is no question of double taxation, since, as stated in the answer to questions two and three above, the inspection of the imported feedstuffs in bulk has been made, and the tax paid therefor for the benefit of the buyer, the same having been offered for sale or sold, but the original imported feed stuffs, having assumed a new character by reason of having been mixed with other feeds, there is no double taxation, since the inspection tax has been paid for the purpose of inspecting an entirely separate and distinct product.

The answer to the third question is therefore "No."

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

C. K. Richards
Assistant

CKR:AMM

APPROVED AUG 23 1944

(Acting) ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN